LAS VEGAS TAXPAYER ACCOUNTABILITY COMMITTEE; LAS VEGAS REDEVELOPMENT REFORM COMMITTEE; D. TAYLOR; CHRISTOPHER BOHNER; AND KEN LIU, APPELLANTS, v. CITY COUNCIL OF THE CITY OF LAS VEGAS, NEVADA; BEVERLY K. BRIDGES, IN HER OFFICIAL CAPACITY AS CITY CLERK OF THE CITY OF LAS VEGAS; LIVEWORK, LLC, A DELAWARE LIMITED LIABILITY COMPANY; FC VEGAS 20, LLC, A NEVADA LIMITED LIABILITY COMPANY; FC VEGAS 39, LLC, A NEW YORK LIMITED LIABILITY COMPANY; AND DOWNTOWN LAS VEGAS ALLIANCE, A NEVADA NONPROFIT CORPORATION, RESPONDENTS.

No. 53657

May 28, 2009 208 P.3d 429

*McCracken, Stemerman & Holsberry* and *Richard G. McCracken, Andrew J. Kahn*, and *Paul L. More*, Las Vegas, for Appellants.

*Kummer Kaempfer Bonner Renshaw & Ferrario* and *Tami D. Cowden, Mark E. Ferrario*, and *Jason Woodbury*, Las Vegas, for Respondents Livework, FC Vegas 20, FC Vegas 39, and Downtown Las Vegas Alliance.

*Bradford R. Jerbic*, City Attorney, and *Phil Byrnes*, Deputy City Attorney, Las Vegas; *Lewis and Roca LLP* and *Daniel F. Polsenberg, Jacqueline A. Gilbert*, and *Jennifer B. Anderson*, Las Vegas, for Respondents City Council of the City of Las Vegas and Beverly K. Bridges.

## OPINION

By the Court, HARDESTY, C.J.:

In this appeal, we consider whether the district court properly refused to require the Las Vegas City Council to place a proposed local initiative and referendum on the June 2009 ballot for the general city election. In reaching its decision, the district court ruled that the City Council had discretion to consider the measures' substantive validity in determining whether to place them on the ballot. We disagree and conclude that the City Council improperly refused

to place these measures on the ballot. In the future, should the City Council believe that a ballot measure is invalid, it must comply with its statutory duty to place the measure on the ballot, and it may then file an action in district court challenging the measure's validity.

Nevertheless, in determining whether the district court abused its discretion in denying relief, and based on considerations of judicial economy and efficiency, we must consider the City of Las Vegas's objections to the statute while placing the burden on the City to demonstrate the measures' invalidity. The district court concluded that NRS 295.009, which requires that ballot questions pertain to a single subject and that they include an accurate description of effect, applies to municipal initiatives and referenda. We conclude that the district court's ruling was correct because, by its terms, the statute applies to all petitions for an initiative or referendum. The district court further rejected appellants' contention that NRS 295.061's time limits bar consideration of the City's objections to the measures, holding that this statute applies only to statewide measures. The district court's reasoning, based on the statute's language, was sound, and we determine that the district court properly interpreted NRS 295.061. Finally, in applying NRS 295.009 to the measures at issue, the district court properly found that the proposed initiative pertains to more than one subject and that the description of effect for the proposed referendum is materially misleading. Therefore, we affirm the district court's order denying appellants' petitions to require that these measures be placed on the ballot.

## FACTS AND PROCEDURAL HISTORY

Appellants are two unincorporated associations formed pursuant to NRS 295.205 to submit and circulate a proposed initiative and referendum and three individuals who are members of both committees and registered voters. Respondents are the Las Vegas City Council and Las Vegas City Clerk Beverly K. Bridges, as well as parties who were permitted to intervene in the district court.[1]

One of the factors motivating appellants to organize the committees and circulate the ballot measures was their objections to a redevelopment project for the new city hall in Las Vegas. The agreement between the City and the respondent developers is for a lease-purchase arrangement, whereby the City would lease the city hall from the developers, with an option to purchase the property.

In December 2008 and January 2009, appellants circulated two petitions within the City of Las Vegas: the Las Vegas Taxpayer Ac-

---

[1]Specifically, three of the entities permitted to intervene were Livework, FC Vegas 20, and FC Vegas 39, developers who have a contract with the City to perform feasibility studies and other preparatory work for a new Las Vegas City Hall. The final intervenor in the district court and respondent in this appeal is the Downtown Las Vegas Alliance, a group of downtown businesses.

countability Act Initiative (the Taxpayer Initiative) and the Las Vegas Redevelopment Reform Referendum (the Redevelopment Referendum). The Taxpayer Initiative would amend the Las Vegas Charter to add a new section with two provisions. The first provision requires voter approval for lease-purchase arrangements that obligate the City to pay more than $2 million per year; it mandates that all such arrangements contemplated for the next two years be presented at each general election. The second provision designates the voters of Las Vegas as the City's "legislative body," as that term is used in certain redevelopment statutes. The latter provision would have the effect of requiring voter approval for key aspects of the redevelopment planning process under Nevada law, including adoption of a plan, amendment of and material deviation from a plan, and approval of certain redevelopment projects. The Redevelopment Referendum seeks to repeal Las Vegas Ordinance 5830, which was passed in 2006 and which adopted the Amended and Restated Redevelopment Plan that is currently in place for Las Vegas.

On December 9, 2008, appellants submitted the form of these petitions to the Las Vegas City Clerk, along with affidavits from the committee members, as required by NRS 295.205(1). They then began to gather signatures. On January 22, 2009, appellants presented signed petitions containing more than twice the minimum number of signatures required by Nevada law.

In the interim, by December 19, 2008, shortly after the petitions were filed with the City Clerk, the Las Vegas mayor voiced disapproval of the measures and indicated that the measures would not appear on the ballot. Following this announcement, appellants sent a letter to the Las Vegas City Attorney asking for information about the City's objections. The City did not respond to the letter and did not file any court action to enjoin or otherwise prevent the measures from proceeding.

The Clark County Department of Elections, which was charged with reviewing the signed petitions, determined on January 29, 2009, that the petitions contained a sufficient number of signatures. On February 10, 2009, the City Clerk issued an official certification of the petitions' sufficiency. Appellants requested an explanation for why the certification was delayed; the Clerk stated that the City was "looking into its legal options."

At a council meeting on March 4, 2009, after continuing the matter from its February 17, 2009, meeting, the City Council officially announced that it would not approve the City Clerk's certifications of sufficiency or place the measures on the ballot. The Council based its decision on an opinion from the City Attorney's office. The City does not dispute that appellants complied with the procedural requirements for collecting signatures and submitting their petitions or that sufficient signatures were obtained.

Less than a week after the March 4 City Council meeting, appellants filed an original petition for a writ of mandamus with this court, *Las Vegas Taxpayer Accountability Committee v. City Council of Las Vegas, Nevada,* Docket No. 53388, insisting that because of time constraints, they had no alternative but to seek relief from this court in the first instance. The developers who are parties to the city hall contract were permitted to intervene and file an answer, and an amicus brief was filed by the Downtown Las Vegas Alliance and others. The intervenors and the amici urged this court to keep the measures off the ballot.

Following oral argument, this court denied the petition in an order, holding that appellants were required to seek relief in the district court in the first instance. The order specifically noted that expedited proceedings are available at the district court level and, in essence, rejected appellants' contention that they had no time to proceed in district court.

On April 10, 2009, two days after this court denied the writ petition, appellants filed a district court action seeking mandamus and declaratory relief. The district court set an expedited hearing that began on the afternoon of April 15, 2009, and continued on April 16, 2009. The hearing included both argument and testimony, primarily from Las Vegas City Attorney Bradford Jerbic. Jerbic testified concerning the measures' asserted shortcomings that, in the City's view, properly prevented their placement on the ballot.

The district court issued its ruling on Friday, April 17, 2009. In a clear, thorough order, the district court denied appellants' requested relief. First, the district court held that, under this court's precedent, it could not compel the City to place invalid measures on the ballot. Accordingly, the district court determined that the City's objections to the measures must be examined. The district court then concluded that NRS 295.009's single-subject and description-of-effect requirements applied to municipal ballot questions, and both measures were invalid under that statute: the initiative violated the single-subject requirement, and the referendum's description of effect was materially misleading. The district court therefore denied appellants any relief. This appeal followed.

## DISCUSSION

In resolving this appeal, we first consider appellants' argument that the City Council and City Clerk had a ministerial duty to place the measures on the ballot once the City Clerk had confirmed that they had sufficient signatures and met all procedural requirements. While we agree with appellants' position, we nevertheless then turn to respondents' objections to the measures, while placing the burden on respondents to demonstrate the measures' invalidity. We next consider whether the single-subject requirement and description-of-

effect requirement set forth in NRS 295.009 apply to municipal ballot measures. We must also consider whether respondents' objections are barred by the time limitation set forth in NRS 295.061. Finally, we examine the district court's application of NRS 295.009 to the measures at issue to determine whether the proposed initiative complied with the single-subject rule and whether the referendum's description of effect is materially misleading.

*Standard of review*

When legal, not factual, issues are at play, this court reviews de novo a district court order resolving a request for declaratory relief. *Nevadans for Nevada v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006). And while a district court's decision to deny extraordinary writ relief is generally reviewed for an abuse of discretion, *DR Partners v. Bd. of County Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000), we resolve issues of statutory construction de novo even in this context. *Nevadans for Prop. Rights v. Sec'y of State*, 122 Nev. 894, 901, 141 P.3d 1235, 1240 (2006).

*The City had a ministerial duty to place procedurally proper measures on the ballot*

Relying on the plain language of NRS 295.215(1) and several cases from other jurisdictions, appellants argue that, after the measures were verified as procedurally correct with sufficient signatures, the City Clerk had a ministerial duty to place them on the ballot. They further argue that the City Council lacked the judicial capacity to evaluate the validity of the measures by any other standards, such as their constitutionality or whether they violated provisions of Nevada's redevelopment statutes. Respondents argue that this court has already rejected appellants' position in previous opinions and held that writ relief is warranted only if the measures are properly placed on the ballot. They contend that the City was not required to seek a judicial declaration of the measures' invalidity. The district court concluded that the City had the discretion to consider the merits of the proposed measures and the court then considered the City's objections to the measures.

*Procedural requirements for placing measures on the ballot*

NRS 295.205(1) provides that a petition for a municipal ballot measure must be filed with the City Clerk. The City Clerk must then confer with the City Council to determine whether the measure would have any fiscal effect; if so, the City Council must prepare a fiscal note to be posted on the City Clerk's website. NRS 295.205(4). The measure's proponents then have up to 180 days to gather signatures, or until 130 days before the election, whichever is

earlier, and they must then submit the signatures to the City Clerk for verification. NRS 295.205(5). Other subsections of the statute set forth guidelines for the documents' form and requirements for the circulators' affidavits. NRS 295.205(6) and (7).

Once the signatures have been submitted, the City Clerk has 20 days to verify the signatures pursuant to NRS 295.250-295.290. NRS 295.210(1). If the measure is certified as sufficient, then it must be presented to the City Council, and the Clerk's certificate "is a final determination as to the sufficiency of the petition." NRS 295.210(2). NRS 295.210(4) provides that a final determination of sufficiency is subject to judicial review in the district court on an expedited basis.

NRS 295.215 sets forth the procedure to be followed once a measure has been certified as sufficient. The statute provides that, once the City Clerk verifies that a ballot measure has sufficient signatures and that it is procedurally correct, the City Council "shall promptly consider the proposed initiative ordinance in the manner provided by law for the consideration of ordinances generally or reconsider the referred ordinance by voting its repeal." NRS 295.215(1). The City Council has 30 days to perform this task. *Id.* If the City Council "fails to adopt the proposed initiative ordinance without any change in substance or fails to repeal the referred ordinance, the council *shall* submit the proposed or referred ordinance to the registered voters of the city." *Id.* (emphasis added). The vote must be held at the next general city election. NRS 295.215(2).

Nothing in the language of these statutes grants the City Council authority to decide, despite a measure's procedural validity, that it should not be placed on the ballot for other reasons, such as objections based on its asserted substantive defects.

> *Under authority interpreting similar statutes, the City has no discretion to refuse to place procedurally valid measures on the ballot*

In support of their argument that the City had no discretion in this matter, appellants cite ample authority from several other jurisdictions. For example, in *Williams v. Parrack*, 319 P.2d 989, 990 (Ariz. 1957), the governing city charter section provided that, if the Phoenix City Council did not adopt a duly proposed initiative, the council "shall proceed to call a special election." On the city attorney's advice, the council and the mayor refused to call a special election for a proposed initiative. *Id.* When the measure's proponent sought mandamus relief to require the initiative's placement on the ballot, the council argued that the measure was beyond the initiative power. *Id.* The Arizona Supreme Court refused to consider the council's objections to the initiative, stating "[w]e are concerned

here only with whether the city council has the power to decline to act upon a petition proposing an initiated ordinance duly certified to it as being sufficient in form and having affixed thereto the required number of signatures. . . ." *Id.* at 991. The court concluded that the council's duty was "purely ministerial and mandatory," and the court therefore affirmed the lower court's order granting mandamus. *Id.*

Similarly, California courts have repeatedly held that registrars of voters, county clerks, and the attorney general do not have discretion to bar an initiative's placement on the ballot due to stated concerns over the measure's substantive validity, but rather, such concerns must be presented to the court. *See Schmitz v. Younger,* 577 P.2d 652 (Cal. 1978) (issuing mandamus to require attorney general to prepare title and summary for initiative, despite assertion that initiative violated single-subject requirement); *Farley v. Healey,* 431 P.2d 650, 653 (Cal. 1967) (Traynor, C.J.) (ordering registrar of voters and county clerk to proceed with signature verification notwithstanding their contention that measure was beyond the initiative power).[2] These cases are well-reasoned and comport with the plain language of Nevada's statutory provisions, which do not allow a local governing body to refuse to place a procedurally valid measure on the ballot.

> *Nevada's precedent does not support the City's contention that it has no ministerial duty to place procedurally valid measures on the ballot*

Respondents rely on two cases in which this court considered the merits of a city's objections to a ballot measure in determining whether to require the city to place the measure on the ballot, *State v. Reno City Council,* 36 Nev. 334, 136 P. 110 (1913), and *Glover v. Concerned Citizens for Fuji Park,* 118 Nev. 488, 50 P.3d 546 (2002), *overruled in part on other grounds by Garvin v. Dist. Ct.,* 118 Nev. 749, 765 n.71, 59 P.3d 1180, 1190 n.71 (2002). Respondents contend that these two cases establish that the City Council had no duty in this case to place the proposed measures on the ballot when it had concerns about their validity, despite the mandatory language of NRS 295.215(1).

First, in the 1913 case, the Reno City Council refused to place on the ballot a municipal initiative that would grant a liquor license to a particular individual. *Reno City Council,* 36 Nev. 334, 136 P. 110. This court held that mandamus would not issue to require a void

---

[2] Other cases cited by appellants to support their argument that the City Clerk and City Council had a ministerial duty to place the proposed measures on the ballot include *Wyman v. Secretary of State,* 625 A.2d 307 (Me. 1993); *Heidtman v. City of Shaker Heights,* 119 N.E.2d 644 (Ohio Ct. App. 1954); *Fried v. Augspurger,* 164 N.E.2d 466 (Ohio Ct. Com. Pl. 1959); and *Philadelphia II v. Gregoire,* 911 P.2d 389 (Wash. 1996).

measure's placement on the ballot. *Id.* at 338, 136 P. at 111. Notably, however, the statutes discussed above were not in effect at that time, and no statutory duties were addressed in the opinion.

More recently, in *Glover*, 118 Nev. 488, 50 P.3d 546, an initiative's proponents had argued in the district court that the Carson City Board of Supervisors had a duty to place the measure on the ballot; the district court rejected that argument. But on appeal, the proponents did not renew this argument, and the opinion does not discuss the nature of the duties imposed by NRS 295.215(1). Rather, the arguments focused on the proponents' contention that the Board could not participate in a court action challenging a ballot measure and the Board's objection that the measure concerned administrative rather than legislative matters. Consequently, this court's opinion did not consider the issue of whether the Board had a ministerial duty under NRS 295.215(1) to place the measure on the ballot.

We conclude that, as neither *Reno City Council* nor *Glover* addressed a city council's duty under NRS 295.215(1), respondents' argument lacks merit. If a city council or other local governing body believes that a proposed ballot measure is substantively invalid, despite complying with procedural requirements and receiving sufficient signatures, then it must file an action in the appropriate district court seeking declaratory, injunctive, or other relief to prevent the measure's placement on the ballot. *See* NRS 295.210(4). Under NRS 295.215(1), a city council may not simply refuse to place the measure on the ballot.

Nevertheless, the district court relied on *Reno City Council* and *Glover* in determining that the City had discretion to consider the merits of the proposed measures in deciding whether they should be placed on the ballot.[3] The district court therefore proceeded to address the City's objections and determined that the measures were invalid. Under these circumstances, we conclude that judicial economy and efficiency will be best served by reviewing the district court's ruling on the City's objections.

But we emphasize that, hereafter, a city council must comply with NRS 295.215(1) and place a procedurally compliant measure on the ballot unless it has filed an appropriate action in the district court and obtained a ruling that the proposed measure is invalid. We note the possibility that, in light of the absence of any statutory or other deadline for filing an action raising such objections, a city could delay filing an action to the point that the court's consideration of the issues is jeopardized. In such circumstances, if the city has

---

[3]The City Council also cited to a 1995 Attorney General Opinion, addressing a proposed referendum similar to the instant referendum and concluding that the City Council could refuse to place it on the ballot. 95-16 Op. Att'y Gen. 69 (1995).

complied with its statutory duty to place the measure on the ballot, then laches may prevent preelection adjudication of the city's objections. And conversely, if the city has failed to comply with its statutory duty, a special election may be necessary and appropriate to guarantee the citizens' right to vote on the proposed measure.[4]

Consequently, we next consider the objections asserted by respondents in determining whether the district court properly denied relief. We note that, although holding that the registrar of voters and county clerk had a ministerial duty to place the challenged measures on the ballot, the California Supreme Court in *Farley* considered the asserted objections while placing the burden on the measure's opponents to make a "compelling showing" that the measure was clearly invalid. 431 P.2d at 652; *see also deBottari v. Norco City Council (Hanzlik)*, 217 Cal. Rptr. 790, 792-93 (Ct. App. 1985). We agree with California's allocation of the burden of proof, and therefore, respondents bear the burden of demonstrating that the measures are clearly invalid. We thus proceed to determine whether the district court properly ruled that they have done so.

*NRS 295.009's single-subject and description-of-effect requirements apply to municipal ballot measures*

NRS 295.009 imposes two requirements on "[e]ach petition for initiative or referendum": that it concern a single subject and that it contain a description of effect of no more than 200 words.[5] We have previously identified the purposes of these requirements. Specifically, the single-subject requirement helps both in promoting informed decisions and in preventing the enactment of unpopular provisions by attaching them to more attractive proposals or concealing

---

[4]While we directed the parties to brief the issue of this court's authority to order a special election, we need not reach the issue in this case in light of our disposition today.

[5]The full text of NRS 295.009 is as follows:

1. Each petition for initiative or referendum must:

(a) Embrace but one subject and matters necessarily connected therewith and pertaining thereto; and

(b) Set forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters. The description must appear on each signature page of the petition.

2. For the purposes of paragraph (a) of subsection 1, a petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.

them in lengthy, complex initiatives (*i.e.*, logrolling). *Nevadans for Prop. Rights v. Sec'y of State*, 122 Nev. 894, 905, 141 P.3d 1235, 1242 (2006) (citing with approval *Campbell v. Buckley*, 203 F.3d 738, 746 (10th Cir. 2000)).[6] And the requirement that each measure include a description of effect facilitates the constitutional right to meaningfully engage in the initiative process by helping to " 'prevent voter confusion and promote informed decisions.' " *Nevadans for Nevada v. Beers*, 122 Nev. 930, 939, 142 P.3d 339, 345 (2006) (quoting *Campbell*, 203 F.3d at 746).

Appellants argue that NRS 295.009 is limited to statewide ballot measures. Respondents assert that the statute applies to all initiatives and referenda in Nevada, including the measures at issue in this case. The district court concluded that the statute applies to municipal ballot measures. We agree with the district court.

It is well established that, when interpreting a statute, the language of the statute should be given its plain meaning unless doing so violates the act's spirit. *McKay v. Bd. of Supervisors*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). Thus, when a statute is facially clear, we will generally not go beyond its language in determining the Legislature's intent. *Id.* Also, no part of a statute should be rendered meaningless and its language " 'should not be read to produce absurd or unreasonable results.' " *Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (quoting *Glover v. Concerned Citizens for Fuji Park*, 118 Nev. 488, 492, 50 P.3d 546, 548 (2002), *overruled in part on other grounds by Garvin v. Dist. Ct.*, 118 Nev. 749, 765 n.71, 59 P.3d 1180, 1190 n.71 (2002)).

NRS 295.009's plain language states that its requirements apply to "[e]*ach* petition for initiative or referendum." NRS 295.009(1) (emphasis added). Nothing in the statute indicates that it was intended to apply solely to statewide measures. Also, the reasons for the statute's requirements apply equally to statewide and municipal measures, and to interpret the statute to exclude municipal ballot measures would therefore yield an unreasonable and absurd result.

The interpretation urged by appellants would require this court to ignore the plain meaning of the term "each" as used in the statute, thereby rendering that term meaningless. We have reviewed the extrajurisdictional authority cited by appellants and do not find it persuasive as to Nevada's statute. In particular, we acknowledge the vig-

[6]In *Fine v. Firestone*, 448 So. 2d 984, 988 (Fla. 1984), the Florida Supreme Court recognized a third benefit of the single-subject rule: unlike other means of enacting law, the initiative process typically does not allow for input in drafting proposed laws.

orous debate that exists in this country concerning whether single-subject requirements are wise as a matter of policy, and we recognize that their application can be difficult. But the Legislature has decided the policy issue for Nevada by enacting NRS 295.009, and the requirement is proper under the Federal and Nevada Constitutions. *Nevadans for Prop. Rights*, 122 Nev. at 902-06, 141 P.3d at 1240-43. Accordingly, we conclude that municipal initiatives and referenda must meet NRS 295.009's requirements.

*NRS 295.061 does not apply to municipal measures, either directly or through Las Vegas City Charter section 5.030*

Appellants assert that, if NRS 295.009's single-subject and description-of-effect provisions apply to municipal initiatives, then so must NRS 295.061's deadline for bringing challenges on those bases. Respondents counter that NRS 295.061 applies only to statewide initiatives, not municipal initiatives, and therefore its deadline does not bar their objections. The district court ruled that NRS 295.061 did not apply to municipal measures, and we conclude that the district court was correct.

Again, we look first to the statute's plain language in determining its application. *State, Dep't of Motor Vehicles v. Terracin*, 125 Nev. 31, 34, 199 P.3d 835, 837 (2009) (noting that when the language of the statute is plain and unambiguous, this court may not look beyond that plain and unambiguous language); *McKay*, 102 Nev. at 648, 730 P.2d at 441. Here, NRS 295.061(1) provides a procedural mechanism for asserting challenges to a measure based on the single-subject requirement and the description of effect, when the measure is "placed on file with the Secretary of State pursuant to NRS 295.015" by specifying that such challenges should be filed in the First Judicial District Court within 15 days after the measure is filed with the Secretary of State. Only statewide measures are filed with the Secretary of State; county and city measures are filed with the county and city clerks, respectively. NRS 295.095 (county measures); NRS 295.205 (city measures). Therefore, the statute's plain language indicates that NRS 295.061 applies only to statewide initiatives. Moreover, it would be absurd to interpret the statute to require that challenges to local measures be filed in the First Judicial District Court rather than the locality in which they are proposed, here, Clark County. *Harris Assocs.*, 119 Nev. at 642, 81 P.3d at 534 (stating that statutes should be interpreted to avoid absurd or unreasonable results).

Appellants correctly identify a procedural gap in the statutory scheme, in that the Legislature prescribed a specific procedure for

asserting single-subject and description-of-effect objections only with regard to statewide, not local, measures. That the Legislature could have addressed local measures is illustrated by NRS 295.105(4) and NRS 295.210(4), which set forth expedited procedures for challenging the sufficiency of, respectively, county and city ballot measures in the local district court on shortened time. But the Legislature could have deemed these procedural mechanisms sufficient for local measures, particularly since the district court, unlike this court, is well-suited to gather evidence, to hold hearings on short notice, and to expedite issuance of a decision. Notably, after appellants' first writ petition to this court was denied, the district court completed its proceedings in little more than one week. Moreover, the Legislature could have reasonably concluded that the local city council was better able to tailor the procedure for enforcing the single-subject and description-of-effect requirements to local conditions and that, pursuant to its authority to control city elections under NRS 293C.110, it could do so if it wished. Accordingly, we reject appellants' contention that NRS 295.061 applies to bar consideration of respondents' objections.

*The Taxpayer Accountability Initiative violates the single-subject requirement*

We have previously held that objections to a measure's validity based on the statutory provisions governing initiatives, such as the single-subject requirement, are properly considered preelection. *Herbst Gaming, Inc. v. Sec'y of State*, 122 Nev. 877, 883-85, 141 P.3d 1224, 1228-29 (2006). We therefore turn to respondents' objections to the initiative based on NRS 295.009's single-subject requirement.

Appellants assert that the initiative concerns the single subject of ''voter approval of use of taxpayer funds to finance large new development projects'' and that this subject is sufficiently defined to satisfy NRS 295.009. Respondents contend that the initiative concerns two unrelated subjects: lease-purchase agreements and redevelopment plans. They further maintain that only an exceptionally broad subject, such as ''voter approval'' could encompass both of the initiative's provisions and that a subject so defined does not meet the statute's requirements. The district court determined that the initiative consisted of two unrelated provisions and was therefore invalid under the single-subject requirement.

NRS 295.009(1)(a) requires that an initiative must ''[e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto.'' NRS 295.009(2) expands on this requirement, stating that it is met ''if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the inter-

ests likely to be affected by, the proposed initiative." As noted above, the single-subject requirement helps to promote informed decisions and to prevent logrolling. *Nevadans for Prop. Rights*, 122 Nev. at 905, 141 P.3d at 1242 (citing *Campbell*, 203 F.3d at 746).

In *Nevadans for Property Rights*, this court noted that NRS 295.009(2) plainly describes the standard that must be used in determining whether an initiative is comprised of more than one subject: each initiative's parts must be "functionally related" and "germane" to each other and the initiative's purpose or subject. 122 Nev. at 906-07, 141 P.3d at 1243. Thus, in resolving this issue, this court must first determine the initiatives' purpose or subject.

### *A primary purpose cannot be determined from the initiative itself and its description of effect*

To determine the initiative's purpose or subject, this court looks to its textual language and the proponents' arguments. *Id.* at 907, 141 P.3d at 1243. In this case, the title of the proposed initiative is the "Las Vegas Taxpayer Accountability Act Initiative." The description of effect does not articulate an overarching purpose or theme and never uses the words "taxpayer" or "accountability." Rather, the description of effect states that the first section of the proposed new city charter provision would require voter approval for certain lease-purchase agreements entered into by the City, and it then avers that the second section would establish that the City's voters would serve as the "legislative body" for certain redevelopment purposes. Neither the title nor the description indicate how these two provisions relate to any single subject. It is therefore difficult to discern the measure's primary purpose in order to evaluate whether its provisions are "functionally related" and "germane" to that purpose, as required by *Nevadans for Property Rights*, 122 Nev. at 907, 141 P.3d at 1243.

### *Appellants' articulation on appeal of the measure's subject is "excessively general" and therefore violates the single-subject rule*

The district court determined that the initiative was composed of two unrelated sections. In the district court's view, the first section imposed a voter-approval requirement for all lease-purchase agreements for all public buildings, not only those that were part of redevelopment projects. The district court therefore found that this section of the initiative "attempt[ed] to limit the Council's powers to use lease-purchase agreements to conduct business." The district court next considered the second section and determined that, by attempting to substitute the City's voters as the "legislative body"

under certain redevelopment statutes, it attempted to limit the powers of the Las Vegas Redevelopment Agency, an entity separate from the City.

The district court thus concluded that the initiative petition included "two distinct subjects, one relating to voter approval for *all* lease purchase agreements (whether for redevelopment projects or otherwise), and the other seeking to govern the redevelopment agency by popular vote." The district court rejected appellants' suggested subject of "requiring voter approval for expenditure of taxes for development projects," since the measure's second section called for voter approval of much more than particular projects, as it would require voter approval for virtually all aspects of redevelopment planning.

In interpreting their constitutional single-subject requirement for initiatives, California courts have held that an initiative proponent may not circumvent the single-subject rule by phrasing the proposed law's purpose or object in terms of "excessive generality": "'For example, the rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as "government" or "public welfare."'" *Harbor v. Deukmejian*, 742 P.2d 1290, 1303 (Cal. 1987) (quoting *Brosnahan v. Brown*, 651 P.2d 274, 284 (Cal. 1982)) (invalidating a proposed law for violating the single-subject rule because the only commonality among the provisions, "fiscal affairs" and "statutory adjustments" to state budget were too general of topics); *see also Chem. Specialties Mfrs. v. Deukmejian*, 278 Cal. Rptr. 128, 133 (Ct. App. 1991) (determining, under a "functionally related or reasonably germane" standard, that an initiative proposing to require disclosures pertaining to, among other things, household toxic products, senior health insurance, and senior nursing homes, could not proceed under the general rubric "public disclosure, *i.e.*, truth in advertising" and violated California's single-subject rule).

The proponents indicate that the measure's purpose is to provide the voters of Las Vegas with greater input into the City's redevelopment decisions by requiring voter approval for major redevelopment decisions. But "voter approval," as held by the California Supreme Court, is an excessively general subject that cannot meet NRS 295.009's requirement. *Senate of the State of Cal. v. Jones*, 988 P.2d 1089, 1101-02 (Cal. 1999). And the purported single subject articulated in appellants' opening brief, "voter approval of use of taxpayer funds to finance large new development projects," is no better, when the proposed initiative is not limited to the financing of "large new development projects" but instead encompasses the far more complex task of adopting and amending redevelopment plans. The district court properly evaluated the proposed initiative's provi-

sions and concluded that the initiative violates the single-subject requirement. We therefore hold that the measure is invalid.[7]

*The Redevelopment Reform Referendum's description of effect is materially misleading*

*Preelection review is appropriate*

Appellants first challenge the propriety of this court reviewing the referendum's statement of effect preelection, arguing that this court rejected a similar attempt to review substantive constitutional matters in the guise of a procedural challenge in *Herbst Gaming, Inc. v. Secretary of State*, 122 Nev. 877, 141 P.3d 1224 (2006). The City Attorney, however, contends that the district court properly reviewed the description-of-effect challenge preelection because the matter concerns limits on the city's self-governing power, which this court stated in *Herbst Gaming*, 122 Nev. at 883, 141 P.3d at 1228, could be reviewed preelection. Because, under NRS 295.009(1)(b), the description of effect is a statutory requirement for placement on the ballot, it is "virtually always ripe for preelection review." *Id.* We see no reason to depart from this general rule here, and thus conclude that it is appropriate for preelection review.

*The description of effect violates NRS 295.009(1)(b)*

Turning to the merits of the description-of-effect issue, appellants contend that the district court erred in determining that the description of effect was materially misleading. The referendum's description of effect sets forth, in full:

> The referendum asks registered voters in the City of Las Vegas to repeal Ordinance No. 5830, entitled "An Ordinance to Adopt an Amended and Restated Redevelopment Plan, Which Includes Additional Property Within the Plan, and to Provide for other Related Matters." Ordinance No. 5830 amended and restated the Redevelopment Plan for the Downtown Las Vegas Redevelopment Area by expanding the area covered by the Plan, restating the purpose of the Redevelopment Plan, determining that blight existed in the Redevelopment Area covered by the Redevelopment Plan, and making certain other findings. *Repeal of Ordinance No. 5830 would prevent the Redevelopment Agency from undertaking further redevelopment projects in*

---

[7]Appellants did not argue in their opening brief that, if the initiative was held to violate the single-subject requirement, the measure was severable. Accordingly, although the initiative contains a severance clause, we do not consider whether severance may have been possible under *Nevadans for Property Rights v. Secretary of State*, 122 Nev. 894, 141 P.3d 1235 (2006).

*the Redevelopment Area or incurring further indebtedness to support such additional projects.*

(Emphasis added.) Appellants argue that the referendum's description of effect correctly states that a repeal of Ordinance No. 5830 would only act prospectively, to prevent the adoption of any additional redevelopment projects and the incurring of additional indebtedness until a new redevelopment plan is adopted. During any interim after the referendum's passage, appellants contend, the redevelopment agency would remain in place and, under NRS 279.676, any existing incurred debts would continue to be paid so long as there is sufficient tax increment from existing plan areas.

The City Attorney, however, contends that the district court correctly determined that the referendum's description of effect was materially misleading. Specifically, the City Attorney argues that the referendum, if passed, would result in the complete termination of the redevelopment plan. Thus, the proposed referendum's statement of effect, which states that passage of the referendum would merely result in the prevention of additional development projects under the redevelopment plan, is inadequate under NRS 295.009(1)(b), as it fails to accurately inform the voters that the referendum's passage would also affect current and existing projects, and debts incurred thereby.

Under NRS 295.009(1)(b), referendum petition signature pages must include a description summarizing the proposed law. This court has noted that this "description of effect" is significant as a tool to help " 'prevent voter confusion and promote informed decisions.' " *Nevadans for Nevada v. Beers*, 122 Nev. 930, 939, 142 P.3d 339, 345 (2006) (quoting *Campbell v. Buckley*, 203 F.3d 738, 746 (10th Cir. 2000)). Additionally, while a referendum's summary and title "need not be the best possible statement of a proposed measure's intent," it nevertheless must still be "straightforward, succinct, and nonargumentative." *Herbst Gaming*, 122 Nev. at 889, 141 P.3d at 1232 (internal quotations omitted). " 'This court has consistently provided that the district court's findings of fact will not be disturbed on appeal if they are supported by substantial evidence.' " *Bedore v. Familian*, 122 Nev. 5, 9-10, 125 P.3d 1168, 1171 (2006) (quoting *Clark County v. Sun State Properties*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003)).

Here, the district court made factual findings regarding the referendum and NRS 295.009(1)(b). Specifically, the district court found that the true effect of the referendum would be to completely terminate the redevelopment plan and, consequently, to impair out-

standing securities issued by the Redevelopment Agency. The district court also found that the referendum's statement of effect was materially misleading because, by stating that the referendum's passage would halt only new, additional development projects, it failed to inform the voters that the repeal of Ordinance No. 5830 would also affect existing redevelopment projects. We agree with the district court that the description of effect materially fails to accurately identify the consequences of the referendum's passage. Because Ordinance No. 5830 adopted the current redevelopment plan, the referendum's repeal of that ordinance effectively repeals the entire redevelopment plan, and the referendum does not provide any replacement plan that could administer the existing redevelopment projects.[8] Thus, because this description of effect does not satisfy NRS 295.009(1)(b), we affirm the district court's findings on this point.

### The description of effect cannot be saved by a "prospective" application of the referendum

Finally, appellants argue that, even if the City Attorney is correct that the referendum can be read in the manner that would result in a complete termination of the redevelopment plan, the referendum is salvageable, as its repeal of an existing statute could nonetheless be read and applied in a "prospective" manner so as to preserve the local electorate's constitutional right to referendum. For instance, as support for this possible "prospective" application of the referendum's repeal of Ordinance No. 5830, appellants distinguish between the effect of a statute declared "void" and the effect of a statute that is "repealed," as set forth in the Missouri Supreme Court case, *R.E.J., Inc. v. City of Sikeston*, 142 S.W.3d 744 (Mo. 2004). In light of our determination that the referendum's proposed repeal of Ordinance No. 5830 would terminate the entire redevelopment plan, we reject appellants' arguments that the description of effect can be saved by a "prospective" application of the referendum.

### CONCLUSION

Upon certification by the City Clerk that the proposed measures had sufficient signatures and otherwise met procedural requirements, the City Council had a duty to place the measures on the ballot, regardless of its objections to the measures' substantive validity. In light of our opinion today, it must promptly assert any such objections in an action filed in the appropriate district court for an

---

[8]*See* Las Vegas Municipal Code § 1.04.040 (stating that the repeal of an ordinance does not automatically revive any ordinance that was previously in effect either before or at the time the ordinance repealed took legal effect).

expedited decision. But under the circumstances of this case and to serve judicial efficiency and economy, we have nevertheless considered respondents' objections to the proposed measures, while placing the burden of establishing the measures' invalidity on respondents.

We conclude that respondents have met this burden. First, NRS 295.009's single-subject and description-of-effect requirements apply to all initiatives and referenda in Nevada. Moreover, respondents' objections on these bases are not barred by NRS 295.061, which applies only to statewide measures. Next, respondents have demonstrated that the proposed initiative violates the single-subject requirement and that the proposed referendum's description of effect is misleading. Thus, the district court properly concluded that the measures were invalid.[9]

Accordingly, we affirm the district court's judgment.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

_____
[9]In light of our conclusion that the measures are invalid on the bases discussed in this opinion, we do not consider respondents' other objections to the measures.