2016 CO 34

In the MATTER OF the TITLE, BAL-
LOT TITLE AND SUBMISSION
CLAUSE FOR 2015–2016 # 63.

Tracee Bentley and Stan Dempsey,
Petitioners,

v.

Bruce Mason and Karen
Dike, Respondents,

and

Suzanne Staiert, Jason Gelender,
and Frederick R. Yarger,
Title Board.

Supreme Court Case No. 16SA51

Supreme Court of Colorado.

May 16, 2016

Attorneys for Petitioners: Ryley Carlock & Applewhite, Richard C. Kaufman, Sarah K. Pallotti, Matthew K. Tieslau, Denver, Colorado.

Attorneys for Respondents: Tierney Lawrence LLC, Martha M. Tierney, Denver, Colorado.

Attorneys for Ballot Title Board: Cynthia H. Coffman, Attorney General, LeeAnn Morrill, First Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this original proceeding, we review the Title Board's action setting the title and ballot title and submission clause for Proposed Initiative 2015–2016 # 63 ("Initiative # 63").[1] Initiative # 63 seeks to amend article II of the Colorado Constitution to establish a "right to a healthy environment." We conclude that Initiative # 63 contains a single subject—the creation of a right to a healthy environment—and that the title of the initiative clearly expresses that subject and is not misleading. We therefore affirm the action of the Title Board.

## I. Facts and Procedural History

¶ 2 Bruce Mason and Karen Dike are the designated proponents ("Proponents") of Initiative # 63, which would establish a right to a healthy environment in Colorado by adding a new section to article II of the Colorado Constitution. The proposed initiative declares that "[t]he natural persons of Colorado, including future generations, have an inherent, indefeasible, and inalienable right to a healthy environment," and deems that right

"a fundamental right." It requires state and local governments to assign the highest priority to the protection of a healthy environment and provides that if state and local laws conflict, the law that is more protective of a healthy environment shall govern. Finally, it creates an enforcement mechanism under which an aggrieved person or governmental entity may sue for a failure to abide by or enforce the provisions of the new right.

¶ 3 Proponents submitted a final version of Initiative # 63 to the Secretary of State on January 8, 2016. On January 20, 2016, the Title Board conducted a hearing and set the title for the initiative. On January 27, 2016, Tracee Bentley and Stan Dempsey ("Petitioners") filed a motion for rehearing, arguing that Initiative # 63 contained multiple subjects and was misleading in violation of article V, section 1(5.5) of the Colorado Constitution.[2]

¶ 4 The Title Board considered the motion for rehearing at its February 3, 2016, meeting and set the following amended title:

An amendment to the Colorado constitution concerning natural persons' fundamental right to a healthy environment and, in connection therewith, defining "healthy environment" as safe and sustainable conditions for human life, including healthy air, water, land, and ecological systems; requiring state and local governments to assign the highest priority to protecting a healthy environment; allowing local governments to enact laws that are protective of a healthy environment; stating that such a local law governs over a state law that is less protective of a healthy environment; allowing natural persons and governmental entities to sue to enforce the fundamental right to a healthy environment; and awarding reasonable costs of litigation upon determination that a violation has occurred.

¶ 5 Petitioners now seek review of the Title Board's actions under section 1–40–107(2), C.R.S. (2015), alleging that Initiative # 63

---

1. Initiative # 63, the title, and the ballot title and submission clause are attached as an appendix.

2. On January 26, 2016, Douglas Kemper filed a separate motion for rehearing making similar allegations. Kemper is not a petitioner in this proceeding.

violates the constitutional single-subject requirement. Petitioners also assert that the title contains impermissible catch phrases and is unclear and misleading.

## II. Standard of Review

 ¶ 6 When reviewing a challenge to the Title Board's decision, "we employ all legitimate presumptions in favor of the propriety of the Board's actions." *In re Title, Ballot Title & Submission Clause for 2009–2010 # 45*, 234 P.3d 642, 645 (Colo.2010). Accordingly, only in a clear case will we overturn the Title Board's finding that an initiative is limited to a single subject. *In re Title, Ballot Title & Submission Clause for 2011–2012 # 3*, 2012 CO 25, ¶ 6, 274 P.3d 562, 565. "We give great deference to the Title Board in the exercise of its drafting authority and will reverse its decision only if the titles are insufficient, unfair, or misleading." *In re 2009–2010 # 45*, 234 P.3d at 648.

 ¶ 7 The scope of our review is limited. We examine a proposed initiative to determine whether it comports with the single-subject requirement and whether the title as a whole is fair, clear, and accurate, but we refrain from addressing its merits. *In re 2011–2012 # 3*, ¶ 8, 274 P.3d at 565. We do not determine the initiative's efficacy, construction, or future application, as these are matters properly considered if and after the voters approve the initiative. *In re 2009–2010 # 45*, 234 P.3d at 645.

## III. Analysis

¶ 8 We first consider whether Initiative # 63 consists of a single subject. Because its provisions are directly tied to and implement its central focus, we conclude that the initiative contains one subject only. We then assess whether the initiative's title is clear. Because the title uses language that is adequately descriptive without relying on emotionally manipulative catch phrases, we conclude that it is.

### A. Initiative # 63 Does Not Violate the Single-Subject Requirement

#### 1. Single-Subject Requirement

 ¶ 9 In accord with article V, section 1(5.5) of the Colorado Constitution, section 1–40–106.5(1)(a), C.R.S. (2015), requires every constitutional amendment proposed by initiative to be limited to a single subject clearly expressed in the initiative's title. We construe the single-subject requirement liberally in order to avoid unduly restricting the initiative process. *In re 2009–2010 # 45*, 234 P.3d at 646.

 ¶ 10 An initiative violates the single-subject requirement when it relates to more than one subject and has at least two distinct and separate purposes. *In re Title, Ballot Title & Submission Clause 2013–2014 # 129*, 2014 CO 53, ¶ 15, 333 P.3d 101, 104. An initiative will satisfy the rule if it "tends to effect or to carry out one general objective or purpose," *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 256*, 12 P.3d 246, 253 (Colo.2000) (quoting *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 25*, 974 P.2d 458, 463 (Colo.1999)), or features several "interrelated" purposes, *In re 2009–2010 # 45*, 234 P.3d at 646. Implementing provisions that are directly tied to the initiative's central focus are not separate subjects. *Id.* In short, "the subject matter of an initiative must be necessarily and properly connected rather than disconnected or incongruous." *In re 2011–2012 # 3*, ¶ 9, 274 P.3d at 565 (citation omitted) (internal quotation marks omitted).

¶ 11 The single-subject requirement serves to protect against two dangers associated with omnibus initiatives. First, "combining subjects with no necessary or proper connection for the purpose of garnering support for the initiative from various factions—that may have different or even conflicting interests—could lead to the enactment of measures that would fail on their own merits." *Id.* at ¶ 11, 274 P.3d at 566; *see also* § 1–40–106.5(1)(e)(I), C.R.S. (2015) (explaining that single-subject requirement is intended to forbid combining disconnected subjects in same measure to secure enactment of measures that would not succeed on their own merits). Second, it helps avoid "voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *In re 2011–*

*2012 # 3,* ¶ 11, 274 P.3d at 566 (quoting *In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–2002 # 43,* 46 P.3d 438, 442 (Colo.2002)); *see also* § 1–40–106.5(1)(e)(II), C.R.S. (2015) (explaining that single-subject requirement is intended to prevent surreptitious measures and apprise voters of the subject of each measure).

### 2. Application to Initiative # 63

¶ 12 Petitioners argue that Initiative # 63 contains multiple separate subjects disconnected from its primary purpose of establishing a right to a healthy environment. They see disconnected subjects: (1) redefining the legal status of local governments; (2) prioritizing and subordinating rights under the Colorado Bill of Rights; (3) modifying preemption law; and (4) creating a cause of action to enforce the right to a healthy environment. We address each of Petitioners' contentions in turn.

¶ 13 *First,* Petitioners argue that Initiative # 63 would change the legal status of local governments under the Colorado Constitution. Proposed subsection (2)(b) of the initiative defines "local government" as "any statutory or home rule county, city and county, city, or town located in the state of Colorado, notwithstanding any provision of article XX or section 16 of article XIV of the Colorado constitution." Article XX grants home rule authority to municipalities, and section 16 of article XIV does so for counties.

¶ 14 While Petitioners' objection arguably overstates the initiative's reach, our inquiry at this juncture avoids interpretation beyond that necessary to determine whether there is a single subject and clear title. *See In re Title, Ballot Title & Submission Clause for 2009–2010 # 24,* 218 P.3d 350, 355 (Colo.2009). In answering the question immediately before us, it suffices for us to observe that an expansive definition of the governmental entities here is necessarily and properly connected to the initiative's purpose, which is to establish and broadly effectuate the right to a healthy environment for all Coloradans. *Accord In re Title, Ballot Title & Submission Clause 2013–2014 # 90,* 2014 CO 63, ¶ 18, 328 P.3d 155, 161 ("The designation of the government entities that

hold the regulatory power authorized under the initiatives is necessarily and properly connected to the central purpose of the measures."). Thus, the initiative's definition of "local government" is not a separate subject.

¶ 15 *Second,* Petitioners contend that Initiative # 63 contains more than one subject because in addition to creating a constitutional right to a healthy environment, it requires state and local governments to assign the protection of a healthy environment "the highest priority." Petitioners claim this prioritization conceals the fact that, if enacted, the new section would subordinate existing constitutional rights to the right to a healthy environment.

¶ 16 But the text of proposed subsection (4) simply provides that state and local governments "shall assign the highest priority to the protection of a healthy environment." It makes no explicit mention of how the right to a healthy environment should be ranked against other constitutional rights.

¶ 17 Moreover, even if Petitioners' interpretation of proposed subsection (4) is correct, this portion of the initiative does not constitute a separate subject. Petitioners seem to suggest that if protecting a healthy environment is given top priority, all other rights must be subordinated to the right to environmental protection. Accordingly, Petitioners appear to believe the initiative must apprise voters of what rights will be subordinated, and that its failure to do so will cause voters to be surprised by a surreptitious provision "coiled up in the folds" of a complex initiative. But this court has consistently required more than the omission of a full accounting of potential effects in order to conclude that an initiative may surprise voters and therefore contains multiple subjects. *Compare In re Title, Ballot Title & Submission Clause for 2011–2012 # 45,* 2012 CO 26, ¶ 20, 274 P.3d 576, 581 (concluding that where initiative lacked embedded provisions that would lead to voter surprise or fraud and its plain language described its impact on other legal rights, voters would not be surprised to learn they were voting to alter existing regime in favor of new priorities),

*with In re Title, Ballot Title & Submission Clause for 2009–2010 # 91*, 235 P.3d 1071, 1079 (Colo.2010) (explaining that voters might be surprised to learn initiative contained second purpose where discovery of that purpose was "revealed only through a close reading of the initiative and an appreciation of its complex text and how its sections interrelate"). Though the initiative does not list in painstaking detail each right or corresponding policy goal that might be subordinated to the protection of a healthy environment should the initiative be enacted, voters will not be surprised to learn that a right assigned the highest priority will take precedence over other objectives. Therefore, we reject Petitioners' implicit subordination argument.

¶ 18 *Third,* Petitioners assert that Initiative # 63 alters Colorado preemption law. Proposed subsection (5) provides that if a state law or regulation addresses the same topic as a local law, regulation, ordinance, or charter provision adopted pursuant to article II of the Colorado Constitution, the measure that is more protective of a healthy environment shall govern.

¶ 19 We addressed a similar contention in *In re Title, Ballot Title & Submission Clause for 2013–2014 # 90,* 2014 CO 63, 328 P.3d 155. That case concerned Initiatives 2013–2014 # 90 and # 93, which proposed adding a new article to the Colorado Constitution that would authorize local governments to enact laws regulating oil and gas development that are more restrictive than state law. *Id.* at ¶ 2, 328 P.3d at 158. The initiatives provided that if a local law enacted pursuant to the new article conflicted with state law, the more restrictive and protective law would govern. *Id.* at App. A, 328 P.3d at 166. Petitioners in that case argued that these provisions changed Colorado preemption doctrine and constituted separate subjects. *See id.* at ¶ 16, 328 P.3d at 160. We disagreed, reasoning that:

> [T]he central purpose of the initiatives is to grant local governments the authority to enact *more restrictive* regulations.... Thus, that the Proposed Initiatives declare that more restrictive regulations enacted under the initiatives would govern over

conflicting state laws is necessarily and properly connected to the initiatives' central purpose.

*Id.* at ¶ 19, 328 P.3d at 161.

¶ 20 The same logic applies to Initiative # 63. The central purpose of Initiative # 63 is to establish a right to a healthy environment for all Coloradans. In order to do so, the initiative not only declares that right to exist, but also creates implementation and enforcement provisions, including requiring local governments to assign the highest priority to protecting a healthy environment and allowing more protective local laws to control over less protective state laws. This latter provision is necessary to ensure that the constitutional right created by the initiative is accorded the respect it is due and that the will of the voters expressed through the initiative's adoption is not overridden by state legislative enactments. Thus, preemption of less protective state laws is necessarily and properly connected to the initiative's central purpose and is not a separate subject.

¶ 21 *Fourth,* Petitioners claim that creating standing to enforce the right to a healthy environment, and to receive punitive damages, generates an entirely separate right to be added to the Constitution. But the cause of action is not its own right; rather, it safeguards the right Initiative # 63 seeks to create. It is therefore necessarily connected to the initiative's central purpose as a tool for its implementation. *See In re Title, Ballot Title & Submission Clause, & Summary 1999–2000 # 258(A),* 4 P.3d 1094, 1099 (Colo.2000) (rejecting petitioners' contention that "the initiative's creation of a cause of action for enforcement of its provisions constitutes a separate subject" and explaining that "implementation provisions tied to an initiative's central focus do not violate the single-subject requirement").

¶ 22 In sum, what Petitioners characterize as "disconnected subjects" are directly tied to and implement the central focus of the initiative. Therefore, we conclude that Initiative # 63 satisfies the single-subject requirement. *See In re 2009–2010 # 45,* 234 P.3d at 646 ("Implementing provisions that

are directly tied to the initiative's central focus are not separate subjects.").

### B. Initiative # 63 Does Not Violate the Clear Title Requirement

#### 1. Clear Title Requirement

¶ 23 Colorado law also requires that an initiative's single subject be clearly expressed in its title. Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106(3)(b), C.R.S. (2015) ("In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear."). The Title Board must "set fair, clear, and accurate titles that do not mislead the voters through a material omission or misrepresentation . . . [but] the titles need not spell out every detail of a proposal." *In re 1999–2000 # 256*, 12 P.3d at 256 (citation omitted). The Title Board has broad discretion in drafting titles, and we give deference to its exercise of that authority. *In re Title, Ballot Title & Submission Clause for 2013–2014 # 89*, 2014 CO 66, ¶ 23, 328 P.3d 172, 179.

#### 2. Application to Initiative # 63

¶ 24 Petitioners claim the title set by the Title Board contains impermissible catch phrases—"healthy environment" and "fundamental right"—designed to appeal to voter emotion. Catch phrases are terms that work in favor of a proposal without contributing to voter understanding; they trigger a favorable response to the proposal based not on its content but on its wording. *In re 2009–2010 # 45*, 234 P.3d at 649. Catch phrases are prohibited from inclusion in titles "to prevent prejudicing voters in favor of the proposed initiative merely by virtue of those words' appeal to emotion and to avoid distracting voters from consideration of the proposed initiative's merits." *Id.*

¶ 25 Petitioners allege "healthy environment" to be a catch phrase because "healthy" is a term that carries positive connotations and is used regularly in our society. Because they believe that "healthy environment" is not properly defined in the text or

title of Initiative # 63, they conclude the phrase is "plainly an appeal to voters' emotions." We disagree. The phrase "healthy environment" is descriptive and informative based on the common understanding of the words it contains. Thus, it contributes to a voter's rational comprehension and does not promote impulsive choices based on false assumptions about the initiative's purpose and its effects if enacted. *See In re 2013–2014 # 89*, ¶ 26, 328 P.3d at 180 ("[A]lthough the environment and conservation are common topics of debate, the words used in the initiative do not constitute a catch phrase because they form a descriptive phrase that contributes to voter understanding of the purpose of the initiative.").

¶ 26 Nor is the term "fundamental right" a catch phrase. The title characterizes the right Proponents seek to establish as a "fundamental right" without defining that phrase, and Petitioners assert that the term "adds a gloss of legitimacy to Initiative # 63 that is unrelated to its substance." But specifying that the new right is a "fundamental right" merely alerts voters that it is to be given primary importance. As this message is consistent with the initiative's prioritization of the right to a healthy environment, the term "fundamental right" is descriptive of the proposal and contributes to voter understanding. Petitioners have failed to "prove that, rather than describing the initiative, the phrase provokes emotion such that it impermissibly distracts voters from consideration of the initiative's merits." *In re 2009–2010 # 45*, 234 P.3d at 650.

¶ 27 The terms "healthy environment" and "fundamental right" accurately describe the right that Initiative # 63 seeks to create and do not improperly distract voters or appeal to their emotions. We therefore conclude that neither is an impermissible catch phrase.

¶ 28 Petitioners also claim that Initiative # 63 violates the clear title requirement because the terms "highest priority" and "protective of a healthy environment" are vague, misleading, and lack measurable standards. Along the same lines, they assert that the title lacks sufficient reference to the

proposed initiative's enforcement provisions. But again, a title need not spell out every detail of a proposal. *In re 1999–2000 # 256*, 12 P.3d at 256. Though the title lacks a detailed description of the specific areas in which the environment should be made the highest priority (for example, the highest legislative priority or the highest budgetary priority), this omission does not make the title unclear. Similarly, the title is not required to list every type of action that would protect or damage a healthy environment; nor is it required to list every right over which the proposed right to a healthy environment would take precedence. The title as set by the Title Board adequately informs voters of the key elements and purpose of Initiative # 63.

¶ 29 Additionally, the title sufficiently advises voters that if enacted, the initiative will create a cause of action to sue for enforcement. The omission of details regarding the remedies available does not obscure the intent of the measure. Moreover, this court's function is not to write the best possible titles; we reverse the Board's chosen language only if it is "clearly inaccurate or misleading." *Id.* As that is not the case here, we reject Petitioners' arguments.

¶ 30 We conclude that the title accurately summarizes the content of Initiative # 63 and does not contain any material omission or misrepresentation, nor does it contain an impermissible catch phrase. The title alerts voters to the key features contained in the initiative and allows them to make an informed choice on the merits of the proposal. It therefore satisfies the clear title requirement, and we defer to the Title Board's decision to approve the title.

## IV. Conclusion

¶ 31 We hold that Initiative # 63 contains a single subject—the creation of a right to a healthy environment. We also hold that because the title set by the Title Board is fair, clear, accurate, and does not mislead voters, it does not violate the clear title requirement.

Accordingly, we affirm the actions of the Title Board.

JUSTICE GABRIEL dissents.

Attachment

**APPENDIX—Initiative # 63 [3] and Title**

*Be it Enacted by the People of the State of Colorado:*

**SECTION 1.** In the constitution of the state of Colorado, **add** section 32 to article II as follows:

**Section 32. Right to a Healthy Environment.** (1) THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT A HEALTHY ENVIRONMENT IS AN ESSENTIAL COMPONENT TO THE HEALTH, SAFETY AND WELFARE OF NATURAL PERSONS.

(2) **Definitions.** FOR PURPOSES OF THIS SECTION, UNLESS THE CONTEXT OTHERWISE REQUIRES:

(a) "HEALTHY ENVIRONMENT" MEANS SAFE AND SUSTAINABLE CONDITIONS FOR HUMAN LIFE, INCLUDING HEALTHY AIR, WATER, LAND, AND ECOLOGICAL SYSTEMS.

(b) "LOCAL GOVERNMENT" MEANS ANY STATUTORY OR HOME RULE COUNTY, CITY AND COUNTY, CITY, OR TOWN LOCATED IN THE STATE OF COLORADO, NOTWITHSTANDING ANY PROVISION OF ARTICLE XX OR SECTION 16 OF ARTICLE XIV OF THE COLORADO CONSTITUTION.

(3) THE NATURAL PERSONS OF COLORADO, INCLUDING FUTURE GENERATIONS, HAVE AN INHERENT, INDEFEASIBLE, AND INALIENABLE RIGHT TO A HEALTHY ENVIRONMENT. PROTECTION OF THIS RIGHT IS HEREBY DEEMED TO BE A FUNDAMENTAL RIGHT OF NATURAL PERSONS OF COLORADO.

(4) STATE AND LOCAL GOVERNMENTS AND THEIR AGENCIES SHALL ASSIGN THE HIGHEST PRIORITY TO THE PROTECTION OF A HEALTHY ENVIRONMENT.

(5) ALL LOCAL GOVERNMENTS HAVE THE POWER TO ENACT LAWS, REGULATIONS, ORDINANCES AND CHARTER PROVISIONS THAT ARE PROTECTIVE OF A HEALTHY ENVIRONMENT. IF ANY STATE LAW OR REGULATION ADDRESSES THE SAME TOPIC AS

---

**3.** Petitioners provided this court with the *original* text of proposed Initiative # 63, but the text reproduced in this appendix is the *final* text of the initiative as it appears on the Secretary of State's 2015–2016 Initiative Filings, Agendas & Results website.

ANY LOCAL LAW, REGULATION, ORDINANCE OR CHARTER PROVISION ENACTED OR ADOPTED PURSUANT TO THIS ARTICLE, THE LAW, REGULATION, ORDINANCE OR CHARTER PROVISION THAT IS MORE PROTECTIVE OF A HEALTHY ENVIRONMENT SHALL GOVERN.

(6) THE FUNDAMENTAL RIGHT TO A HEALTHY ENVIRONMENT MAY BE ENFORCED BY ANY AGGRIEVED NATURAL PERSON OR GOVERNMENTAL ENTITY IN AN ACTION AT LAW FOR DAMAGES OR IN AN ACTION IN EQUITY FOR INJUNCTIVE OR DECLARATORY RELIEF FOR ANY FAILURE TO ABIDE BY OR ENFORCE THE PROVISIONS OF THIS FUNDAMENTAL RIGHT TO A HEALTHY ENVIRONMENT. IN ANY ACTION BY AN AGGRIEVED NATURAL PERSON OR GOVERNMENTAL ENTITY FOR ENFORCEMENT OF THE FUNDAMENTAL RIGHT TO A HEALTHY ENVIRONMENT, PUNITIVE DAMAGES FOR RECKLESS DISREGARD RESULTING IN VIOLATIONS OF THE CONSTITUTIONAL PROVISIONS MAY BE AWARDED, AND A PREVAILING AGGRIEVED NATURAL PERSON OR GOVERNMENTAL ENTITY SHALL BE ENTITLED TO AND AWARDED REASONABLE ATTORNEY FEES AND COSTS.

(7) ALL PROVISIONS OF THIS SECTION OF ARTICLE II OF THE COLORADO CONSTITUTION ARE SELF-EXECUTING AND SEVERABLE. THIS SECTION APPLIES TO THE STATE OF COLORADO AND TO EVERY COLORADO CITY, TOWN, COUNTY, AND CITY AND COUNTY, NOTWITHSTANDING ANY PROVISION OF ARTICLE XX OR SECTION 16 OF ARTICLE XIV OF THE COLORADO CONSTITUTION.

### *Ballot Title Setting Board*

### Proposed Initiative 2015–2016 # 63

The title designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning natural persons' fundamental right to a healthy environment and, in connection therewith, defining "healthy environment" as safe and sustainable conditions for human life, including healthy air, water, land, and ecological systems; requiring state and local governments to assign the highest priority to protecting a healthy environment; allowing local governments to enact laws that are protective of a healthy environment; stating that such a local law governs over a state law

that is less protective of a healthy environment; allowing natural persons and governmental entities to sue to enforce the fundamental right to a healthy environment; and awarding reasonable costs of litigation upon determination that a violation has occurred.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning natural persons' fundamental right to a healthy environment and, in connection therewith, defining "healthy environment" as safe and sustainable conditions for human life, including healthy air, water, land, and ecological systems; requiring state and local governments to assign the highest priority to protecting a healthy environment; allowing local governments to enact laws that are protective of a healthy environment; stating that such a local law governs over a state law that is less protective of a healthy environment; allowing natural persons and governmental entities to sue to enforce the fundamental right to a healthy environment; and awarding reasonable costs of litigation upon determination that a violation has occurred?

JUSTICE GABRIEL, dissenting.

¶ 32 Although I agree with much of the majority's analysis in this case, I believe that Initiative # 63 contains at least two subjects that are not necessarily and properly connected. Accordingly, I respectfully dissent.

### I. Analysis

¶ 33 I need not repeat the majority's recitation of the applicable law concerning the single subject requirement. I would add only the following two points, which are pertinent to my analysis.

¶ 34 First, the single subject requirement "prevents the proponents from combining multiple subjects to attract a 'yes' vote from voters who might vote 'no' on one or more of the subjects if they were proposed separately." *In re Title, Ballot Title & Submission*

*Clause for 2013–2014 # 76,* 2014 CO 52, ¶ 8, 333 P.3d 76, 79.

¶ 35 Second, I agree that when an initiative tends to effectuate one general objective or purpose, the initiative presents only one subject, and provisions necessary to effectuate the initiative's purpose are properly included within its text. *In re Title, Ballot Title & Submission Clause for 2013–2014 # 90,* 2014 CO 63, ¶ 11, 328 P.3d 155, 159. The breadth of the objective, however, is not without limits. Thus, "[a] proponent's attempt to characterize an initiative under some general theme will not save the initiative from violating the single-subject rule if the initiative contains multiple subjects." *In re Title, Ballot Title & Submission Clause for 2009–2010 # 91,* 235 P.3d 1071, 1076 (Colo.2010).

¶ 36 Here, I agree with the majority that many of Initiative # 63's provisions are necessarily and properly connected to its principal purpose of establishing a fundamental right to a healthy environment. In my view, however, proposed subsection 4 of Initiative # 63 states a separate subject.

¶ 37 Subsection 4 provides, "State and local governments and their agencies shall assign the highest priority to the protection of a healthy environment." I cannot agree that this provision, which I believe would give the new fundamental right to a healthy environment priority over other constitutional rights, is *necessarily* and properly connected to the creation of the new constitutional right. *See In re 2013–2014 # 90,* ¶ 11, 328 P.3d at 159. Moreover, in my view, a voter who supports a healthy environment might be inclined to vote for Initiative # 63, even though he or she might have been inclined to vote against the provision giving the new constitutional right priority over other constitutional rights, had that subject been proposed separately. Accordingly, Initiative # 63 combines multiple subjects to attract a "yes" vote from voters who might vote "no" on one or more subjects if they were proposed separately, and thus, this initiative achieves precisely what the single subject requirement seeks to prevent. *See In re 2013–2014 # 76,* ¶ 8, 333 P.3d at 79.

¶ 38 Similarly, although provisions necessary to effectuate an initiative's broad pur-

pose are properly included within its text, *In re 2013–2014 # 90,* ¶ 11, 328 P.3d at 159, not every provision that is related to an initiative's general theme can be said to be necessary to effectuate the initiative's purpose, *see In re 2009–2010 # 91,* 235 P.3d at 1076. In this case, giving the new constitutional right to a healthy environment priority over all other rights is indisputably related to Initiative # 63's broad purpose. I cannot agree, however, that such prioritization is necessary to effectuate that broad purpose. *See In re 2013–2014 # 90,* ¶ 11, 328 P.3d at 159.

¶ 39 I am not persuaded otherwise by the proponents' suggestion that prioritization of the new healthy environment amendment over other rights is merely an effect of Initiative # 63, and the possible effect of a measure on Colorado law is irrelevant to the single subject analysis. In my view, Initiative # 63's prioritization provision, Initiative # 63, § 4, is not merely an effect of the healthy environment amendment. Rather, if adopted, it would embody an independent and substantive change to applicable law, and I believe that voters would be surprised to learn that a "yes" vote for a healthy environment amendment would materially alter the priorities of the rights set forth in our Bill of Rights. *See* § 1–40–106.5(1)(e)(II), C.R.S. (2015) (providing that the single subject requirement seeks "[t]o prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters").

¶ 40 Accordingly, I believe that Initiative # 63 violates the single subject requirement.

## II. Conclusion

¶ 41 For these reasons, I respectfully dissent.