JUSTICE BOATRIGHT,
dissenting.
187 Initiative 2015-2016 #182 ("Initiative #1832") and Initiative 2015-2016 #188 ("Initiative-#1383") both contain a single subject-changing how electoral districts are redrawn in Colorado. As the Title Board reasonably concluded, every provision in the proposed initiatives relates to that subject and is integral to that subject's fulfillment, meaning the initiatives do not pose any risk of log rolling or of voter surprise and fraud. I would therefore defer to the Title Board's conclusion that both initiatives contain a single subject. Accordingly, I respectfully dissent.
138 The majority recites, and I reiterate, that the scope of our review is remarkably limited. Maj. op. ¶ 11 (citing In re Title, Ballot Title & Submission Clause for 2011-2012 #3, 2012 CO 25, ¶ 8, 274 P.3d 562, 565), When assessing whether a proposed initiative satisfies the single subject requirement, we read the initiative's plain language as a whole to determine whether the initiative's subject matter is "necessarily and properly connected rather than disconnected or incongruous." Id. at ¶¶ 11, 15 (quoting In re 2011-2012 #3, ¶ 9, 274 P.3d at 565); In re Title, Ballot Title & Submission Clause for 2009-2010 #45, 234 *484 P.3d 642, 646 (Colo.2010) ("[Wle must review the initiative as a whole rather than piecemeal. ..."). Through this analysis, the single subject requirement is designed to ward off two potential dangers of omnibus initiatives: (1) "log rolling," meaning the combination of multiple subjects to attract support for the initiative from several factions; and (2) voter surprise and fraud. Maj. op. ¶¶ 13-14; In re Title, Ballot Title & Submission Clause for 2015-2016 #63, 2016 CO 34, ¶ 11, 370 P.3d 628, 631-32; see also § 1-40-106.5(1)(e)(I)-(II), C.R.S. (2015), Vitally, "we do not address the merits of the proposed initiatives or suggest how they might be applied if enacted," maj. op. 1 11, "as those issues do not come up unless and until the voters approve the amendment," In re Title, Ballot Title & Submission Clause for 2018-2014 #89, 2014 CO 66, ¶ 10, 328 P.3d 172, 176.
139 Consistent with our limited role in ballot title cases, "we liberally construe the single subject requirement," id. at I 8, 828 P.3d at 176, and "employ all legitimate presumptions in favor of the propriety of the [Title] Board's actions," maj. op. " 10 (quoting In re 2011-2012 #8, "I 6, 274 P.8d at 565). Accordingly, we will "overturn the Title Board's finding that an initiative contains a single subject only in a clear case." Id.; see also In re Title, Ballot Title & Submlssmn Clause for 2013-2014 #76, 2014 CO 52, 1 40, 333 P.3d 76, 89 (Eid, J., dissenting) other things, this restraint ensures that we apply the single subject rule 'without conforming it to [our] own policy preferences." (quoting In 're Title, Ballot Title & Submission Clause for 2009-2010 #91, 285 P.8d 1071, 1088 (Colo.2010) (Coats, J., dissenting))). Here, when giving the Title Board the required deference and applying the correct standard, I would conclude that these proposed initiatives are not "clear casefs]" of multiple subjects because every provision in the initiatives is necessarily and properly connected to the single subject of changing how electoral districts are redrawn in Colorado.
140 Regarding Initiative #182 and Initiative #188, the majority correctly notes that both initiatives would assign to the Supreme Court Nominating Commission ("nominating commission") the task of recommending ten applicants to the "Independent Colorado [in Initiative #188, "Legislative"] Redistricting Commission" ("redistricting commission") for the purpose' of filling four of its seats. Maj. op. T 6. The majority then concludes that involving the nominating commission in the redistricting process constitutes a separate subject. See id, at 1 19. I disagree, The nominating commission's role in recommending members for the redistricting commission is simply part of the initiatives' chosen implementation of a new redistricting process in Colorado and is necessarily and properly connected to the creation of a new redistricting commission under that plan. See In re Title, Ballot Title & Submission Clause & Summary for 2005-2006 #73, 135 P.3d 736, 738 (Colo.2006) ("Mere implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject."). It would make no sense to propose a new redistricting commission without also providing the means to add members to it.
41 Furthermore, if the majority is correct that assigning the nominating commission the task of recommending applicants to the new redistricting commission constitutes a separate subject, then logically, that "subject" would have to be proposed in a separate initiative, Again, that makes no sense. An initiative that provides how to add members to a new redistricting commission must necessarily create that commission and define that commission's purpose. Simply put, the nominating commission's role in appointing members to the redistricting commission cannot stand on its own and is therefore not a separate subject. .
42 I -also disagree with the majority that the "political ramifications" of redistricting factor into the analysis here. See maj. op. € 25. It certainly may be the case that, by taking on the task of forwarding to the redistricting commission certain candidates for membership, the nominating commission will lose its "apolitical" character, See id. But that possible future impact on the nominating commission is for the voters, not us, to evaluate. In re Title, Ballot Title & Submission Clause for 2007-2008 #17, 172 P.3d 871, 879 (Colo.2007) (Eid, J., dissenting) ("'The pro *485 posed initiative might be a good idea or a bad idea; we must leave that decision to the voters.").
483 Regarding Initiative #132 the majority accurately notes that the initiative affects the process for redrawing congressional as well as state legislative districts. Maj. op. T 4. However, I disagree that applying a unitary process to the redrawing of federal and state districts constitutes multiple subjects. While it is true that congressional districts and state legislative districts are currently redrawn under different processes and by different bodies, both clearly involve the redrawing of electoral districts. As such, a proposal to change the process for redrawing congressional districts and state legislative districts has a "general objective or purpose [that] presents only one subject." In re Title, Ballot Title & Submission Clause & Summary for 1999-2000 #25, 974 P.2d 458, 468 (Colo.1999). By dwelling on the differences in the legal roots and criteria between congressional redistricting and state legislative redistricting, the majority loses Slght of the initiative's overall goal and single subject. See In re 2009-2010 #45, 284 P.3d at 646 ("[We must review the initiative as a whole rather than piecemeal. ...").
144 I am also not persuaded that Initiative #132 presents the danger of "log rolling." Initiative #182 would present voters with a clear choice between putting in place a new unitary independent redistricting commission in Colorado or, alternatively, preserving the current system. Voters therefore would not be faced with the dilemma that stems from log rolling initiatives.
45 Thus, in my view, both Initiative #182 and Initiative #133 satisfy the single subject rule. They are not the "clear case[s]" our precedent requires for us to reverse the Title Board. I would therefore defer to the Title - Board's conclusion that both initiatives contain a single subject, Accordingly, I respectfully dissent.
I am authorized to state that JUSTICE COATS and JUSTICE EID join in this dissent.